UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| NEWTEK SMALL BUSINESS FINANCE, LLC, | ) ) ) | Case No. 2:20-cv-138 |
| Plaintiff, | ) ) | Judge Travis R. McDonough |
| v. | ) ) | Magistrate Judge Cynthia R. Wyrick |
| BOYZ TRANSPORTATION SERVICES, LLC, RANDALL MILLER COMPANY, INC., and LANDREW PROPERTIES, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court is Defendant Landrew Properties, LLC's ("Landrew") motion to dismiss for lack of subject matter jurisdiction (Doc. 14). Landrew seeks dismissal of Plaintiff Newtek Small Business Finance, LLC's ("Newtek") claims against it based on Newtek's failure to exhaust state administrative remedies prior to filing this action. (*Id.* at 3.) For the reasons set forth below, Landrew's motion will be **DENIED**.

I. BACKGROUND

On July 31, 2019, Newtek loaned $3,700,000 to Defendants Boyz Transportation Services, LLC ("Boyz") and Randall Miller Company, Inc. ("RMC") pursuant to a U.S. Small Business Administration Note ("the Note"). (Doc. 1, at 2.) The Note was secured in accordance with two commercial security agreements. (*Id.* at 2–3.) Among the collateral securing the Note in the commercial security agreements were nine vehicles ("the vehicles") owned by Boyz and

RMC. (*Id.* at 3.) Newtek was made the first lien holder of the vehicles under the agreements. (*Id.*)

Following the execution of these agreements, Boyz and RMC defaulted on the loan, prompting Newtek to send them a letter of default on May 19, 2020. (*Id.* at 3–4.) Boyz and RMC have not made any payments toward their obligations under the Note, but they have coordinated with Newtek regarding the surrender of collateral. (*Id.*) Boyz and RMC informed Newtek that the vehicles were being stored on premises that RMC leased from Defendant Landrew. (*Id.* at 4.)

Newtek has demanded possession of the vehicles on multiple occasions since March 2020, but Landrew has denied Newtek access to the vehicles. (*Id.*) Landrew claims it has storage liens on the vehicles under North Carolina General Statutes § 44A-2. (*Id.*) Landrew filed nine Form LT-260s concerning the vehicles with the North Carolina Division of Motor Vehicles ("NCDMV" or "the Division"). (*Id.*) Landrew also filed nine Form LT-262s concerning the vehicles on May 21, 2020, claiming a storage lien on each vehicle for $10,100.00, for a total of $90,900.00. (*Id.* at 5.)

On June 18, 2020, Newtek sent a letter to the NCDMV asserting its first lien rights in the vehicles. (*Id.*) In the letter, Newtek acknowledged the filing of the nine Form LT-262s by Landrew and requested that the NCDMV "provide the required written notice to Newtek pursuant to its secured lien" on the vehicles. (Doc. 1-9, at 1–2.) Newtek included with its letter copies of the vehicles' certificates of title, which list Newtek as first lienholder. (*See id.* at 3–20.)

On July 1, 2020, Newtek filed this action against Boyz, RMC, and Landrew seeking declaratory and injunctive relief. (Doc. 1, at 6–8.) As relevant to this motion, Newtek seeks a

2

declaration as to whether Landrew is entitled to a storage lien on the vehicles under North Carolina law and an injunction for immediate possession of the vehicles.  (*Id.*)

On August 31, 2020, Landrew moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.  (*See* Docs. 14, 15.)  Landrew argues that Newtek has failed to exhaust the administrative remedies offered by the NCDMV and that such failure divests this Court of subject-matter jurisdiction over Newtek's claims against it.  (*See* Doc. 14, at 3.)  Landrew's motion is ripe for adjudication.

## II. STANDARD OF LAW

Subject-matter jurisdiction is "the courts' statutory or constitutional power to adjudicate the case."  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) (emphasis omitted).  A particular rule or prescription is "jurisdictional" if it "deliniat[es] the class of cases" that implicate the Court's authority to hear a case.  *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–61 (2010) (citations omitted).  Jurisdictional conditions—which rob the Court of its authority to hear a case if not complied with—are distinct from "claim-processing rules"—which do not.  *See id.* at 161.  Rules or requirements are only jurisdictional when so designated by the legislature.  *See id.* (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006)); *see also Arbaugh*, 546 U.S. at 516 ("[W]hen Congress does not rank a statutory limitation as jurisdictional, courts should treat the restrict as nonjurisdictional in character.").

The doctrine of exhaustion of administrative remedies "provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)).  Administrative exhaustion serves to protect administrative-agency authority and to promote efficiency.  *Id.*  "Proper exhaustion demands compliance with an

agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91.

In some instances, failure to exhaust administrative remedies deprives a federal district court of subject-matter jurisdiction. For example, when a court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 and the federal statute at issue conditions jurisdiction on the exhaustion of administrative remedies, the court lacks subject-matter jurisdiction over claims thereunder if the plaintiff has failed to exhaust. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 327 (1976) (acknowledging that the Social Security Act "precludes federal-question jurisdiction in an action challenging denial of claimed benefits" and "[t]he only avenue for judicial review is 42 U.S.C. § 405(h), which requires exhaustion of the administrative remedies provided under the Act as a jurisdictional prerequisite").

In this case, however, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy is greater than $75,000. (*See* Doc. 1.) Thus, this Court's jurisdiction is not predicated on the presence of certain legal claims. Landrew does not argue that either prerequisite under § 1332 is not satisfied. Instead, it argues that the failure to exhaust state administrative remedies deprives this Court of its subject-matter jurisdiction. (*See* Doc. 15, at 3–5.) But Newtek's alleged failure to exhaust administrative remedies does not defeat subject-matter jurisdiction under § 1332. Accordingly, Landrew's motion to dismiss for failure to exhaust is better suited to treatment as a motion to dismiss for failure to state a claim under Rule 12(b)(6). As such, it is analyzed in accordance with the following principles.

According to Federal Rule of Civil Procedure 8, a plaintiff's complaint must contain "a

4
Case 2:20-cv-00138-TRM-CRW   Document 32   Filed 11/19/20   Page 4 of 10   PageID #: 266

short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6).  On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679.  For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint.  *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).  This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859.  This factual matter must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.  ANALYSIS

Landrew argues that Newtek's claims against it must be dismissed because Newtek has not followed the statutory scheme laid out in North Carolina General Statutes Annotated §§ 44A-4(b)(1) concerning the enforcement of the rights of storage lienholders.  (Doc. 15, at 7.)

Newtek counters that (1) no administrative remedy is available to it, and (2) even if there is an administrative remedy, such remedy is not exclusive or (3) effective.  (Doc. 20, at 5–10.)  Newtek further argues that, to the extent North Carolina law provides an exclusive and effective administrative remedy, it has exhausted such remedies.  (*Id.* at 10–11.)

### A.  North Carolina Law on Exhaustion

In North Carolina, "where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts."  *Presnell v. Pell*, 260 S.E.2d 611, 615 (N.C. 1979) (citations omitted).  Accordingly, a court must dismiss the case "if administrative remedies specifically provided by statute are not exhausted before alternative recourse is sought through the courts.  *Cheatham v. Town of Taylortown*, 803 S.E.2d 658, 661 (N.C. Ct. App. 2017) (quoting *Justice for Animals, Inc. v. Robeson Cnty.*, 595 S.E.2d 773, 775 (N.C. Ct. App. 2004)).  However, the Supreme Court of North Carolina has held that exhaustion is not necessarily required when no statute or case mandates exhaustion prior to suit.  *See Intersal, Inc. v. Hamilton*, 834 S.E.2d 404, 414–15 (N.C. 2019) (holding that the plaintiff was not required to exhaust administrative remedies because the statute at issue did not specifically apply to the plaintiff's claims and did not make any administrative procedure a "condition precedent" to filing suit).  When the statute at issue does not "creat[e] a specific requirement for the exhaustion of administrative remedies," the Court's ability to hear a case is undisturbed by the plaintiff's failure to exhaust.  *See id.* at 415.

### B. Whether Newtek Was Required to Comply with the Procedures in § 44A-4 Prior to Bringing Suit

North Carolina General Statutes Annotated § 44A-4 governs the enforcement of liens by sale. Subsection 44A-4(a) provides that a storage lienor may enforce a lien on a motor vehicle by public or private sale ten days after the maturity of the obligation to pay the towing or storage charges. Subsection 44A-4(a) further provides that "[t]he lienor may bring an action on the debt in any court of competent jurisdiction at any time following the maturity of the obligation" and that the failure of the lienor to do so within 180 days of the commencement of the storage "shall constitute a waiver of any right to collect storage charges which accrue after such period." The statute also states that "[t]he owner or person with whom the lienor dealt may at any time following the maturity of the obligation bring an action in any court of competent jurisdiction as by law provided." N.C. Gen. Stat. Ann. § 44A-4(a).

Section 44A-4(b)(1) provides in relevant part that, after the ten-day period has expired, the storage lienor "shall give notice to the Division of Motor Vehicles that a lien is asserted and a sale is proposed and shall remit to the Division a fee of thirteen dollars." *Id.* § 44A-4(b)(1). The NCDMV will then "issue notice by certified mail, return receipt requested, to the person having legal title to the property, if reasonably ascertainable, to the person with whom the lienor dealt if different, and to each secured party and other person claiming an interest in the property who is actually known to the Division or who can be reasonably ascertained." *Id.* The notice must include, among other things "a form whereby the recipient may notify the Division that a hearing is desired by the return of such form to the Division." *Id.* If notice of a request for hearing is received, the NCDMV must then notify the lienor of such request. *Id.* The party requesting a judicial hearing must notify the NCDMV within ten days from the receipt of notice or the right to a pre-sale hearing is waived. *Id.* If the party requesting a hearing does notify the NCDMV

within the ten-day window, then the lien may be enforced by sale "only pursuant to the order of a court of competent jurisdiction." *Id.*

As the Court of Appeals of North Carolina has explained, subsection (a) governs the methods of enforcing a storage lien by sale, and subsection (b) provides "a means of securing authorization to sell the vehicle as a method for obtaining a title transfer from the DMV." *Ernie's Tire Sales & Serv. v. Riggs*, 417 S.E.2d 75, 78 (N.C. Ct. App. 1992) (noting that the proceedings listed in subsection (b) are necessary because "registered motor vehicles, unlike other items of personal property, require the involvement of a state agency to effect a transfer of title"). The process set forth in § 44A-4 is one that a lienholder claiming a lien under § 44A-2 (which includes storage liens) must follow in order to enforce the lien by sale. *See AT&T Family Fed. Credit Union v. Beaty Wrecker Serv., Inc.*, 425 S.E.2d 427, 428 (N.C. Ct. App. 1993). Landrew itself acknowledges that, in § 44A-4, "North Carolina's general assembly has established a statutory scheme with the NCDMV and North Carolina court system for a storage lienholder to enforce its lien against the owner and secured parties in order to adjudicate storage liens." (Doc. 14, at 7.)

While "a party asserting rights pursuant to a statute must operate within the guidelines created by that particular statutory scheme," *Peace River Elec. Co-op., Inc. v. Ward Transformer Co., Inc.*, 449 S.E.2d 202, 209 (N.C. Ct. App. 1994), Landrew is the party asserting rights pursuant to § 44A-4, not Newtek. Landrew nevertheless argues that Newtek's ability to request a hearing concerning Landrew's storage lien is controlled by § 44A-4. (*See* Doc. 15, at 5.) Landrew argues that Newtek "availed itself" of the process in § 44A-4 by sending the letter to the NCDMV. (*Id.* at 7.)

Although § 44A-4(b)(1) provides for pre-sale hearings at the request of the owner or other secured party, nothing in that subsection provides that such a hearing is the only method for another secured party to assert its interest in a vehicle. *See generally* N.C. Gen. Stat. Ann. § 44A-4. To the extent Newtek seeks a declaration as to the respective security rights of the parties, § 44A-4(a) provides that it may do so. The second paragraph of subsection (a) provides, "The owner . . . may at any time following the maturity of the obligation to bring an action in any court of competent jurisdiction as provided by law." N.C. Gen. Stat. Ann. § 44A-4(a). Section 44A-1 defines "owner" as including "[a] secured party entitled to possession," which Newtek claims to be. Such action by an owner is distinct from any action filed pursuant to subsection (b)(1) by a storage lienholder upon notice that a hearing has been requested prior to sale of the vehicle.

Thus, the notice-and-request-for-hearing process outlined in subsection (b)(1) is not the exclusive method for an interested party to obtain a hearing under the statute. Further, that process is for the procedural protection of parties other than the storage lienholder who claim an interest in a vehicle. *See id.* § 44A-4(g) (creating a right of action for persons injured by a lienor's noncompliance with the notice requirements in subsection (b)(1)). While the procedures in subsection (b)(1) may be a necessary precondition to Landrew's enforcement of its lien by sale, Landrew has identified no case law or statutory provisions that condition Newtek's right to judicial process on compliance with subsection (b)(1).[1] For these reasons, the Court finds that the procedures set forth in § 44A-4 do not preclude Newtek's action in this Court, and to the

---

[1] Indeed, Newtek's role in the process is limited to notifying the NCDMV of its request for a court hearing before the vehicles are sold. The NCDMV takes no part in the adjudication of the parties' rights nor does it independently authorize the sale of a vehicle. Instead, if a hearing is requested, the NCDMV waits for a court order resolving the claimed interests in the vehicle and authorizes or refuses to authorize the sale as directed by the court.

9
Case 2:20-cv-00138-TRM-CRW   Document 32   Filed 11/19/20   Page 9 of 10   PageID #: 271

extent this action comes within the purview of § 44A-4, subsection (a) authorizes this suit. The Court will not dismiss Newtek's claims for failure to exhaust administrative remedies.

## IV. CONCLUSION

Landrew's motion to dismiss (Doc. 14) is **DENIED**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**